# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**GRASIELA FRANKLIN,**                          Chapter 7
    Debtor                              Case No. 08-18756-JNF

~~~~~~~~~~~~~~~~~~~~~~~~

**RBSF, LLC,**
    Plaintiff
v.                                              Adv. P. No. 09-1065

**GRASIELA FRANKLIN,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~


## MEMORANDUM


## I. INTRODUCTION

The matter before the Court is "Plaintiff's Motion for Reconsideration or Rehearing Regarding Court's Order on Plaintiff's Motion for Leave to Amend the Adversary Proceeding Complaint" filed by RBSF, LLC (the "Plaintiff" or "RBSF"). Grasiela Franklin (the "Debtor" or the "Franklin") filed an Opposition to the Motion. The issue presented is whether the Franklin has satisfied the standard for relief from a judgment or order under Fed. R. Civ. P. 60, made applicable to this adversary proceeding by Fed. R. Bankr. P. 9024.

1

## II. FACTS

A. <u>Procedural Background</u>

The Debtor filed a voluntary Chapter 7 petition on November 17, 2008. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed RBSF as the holder of a claim in the sum of $130,000 arising out of a judgment entered against her in January of 2008. She listed total unsecured debt in the amount of $434,769.71. On Schedule I-Current Income of Individual Debtor(s), the Debtor disclosed that she was self-employed in the field of "relocation management" with average monthly income of $2,600 and monthly net income of -$809.33. In her Statement of Financial Affairs, however, the Debtor disclosed that she had gross income of $41,791 in 2006 and had no income whatsoever in either 2007 or 2008. In the Statement of Financial Affairs, she also disclosed that the RBSF's judgment was obtained from the Suffolk Superior Court, Department of the Trial Court in Civil Action No. SUCV2008-04079.[1]

On February 17, 2009, RBSF timely filed a "Complaint to Determine Dischargeability." Although the Chapter 7 Trustee had moved to extend the time period within which to object to the Debtor's discharge under 11 U.S.C. § 727(a), he never filed a complaint. On July 14, 2009, the Chapter 7 Trustee filed a Report of No Distribution and, on July 27, 2009, the Debtor received a discharge. The adversary proceeding is the only matter preventing the closure of the Debtor's bankruptcy case.

---

[1] The Plaintiff disclosed in its Motion for Reconsideration that the judgment was obtained by default.

2

B. <u>RBSF, LLC's First Complaint</u>

RBSF, in its original complaint, identified itself as a single-member California limited liability company with a principal place of business in San Francisco, California. It identified its Managing Member as Chong Kee Tan ("Tan"). It identified the Debtor as the owner of a business known as SeamlessTransition, whose website set forth its business as assisting executives and their families to relocate and to secure transitional housing in major metropolitan cities throughout the United States.[2] Additionally, it set forth the following allegations, which the Court, in large measure, has paraphrased. Notably, the Plaintiff referred to RBSF and Tan interchangeably.

The Plaintiff alleged that, in May of 2007, the Debtor approached Tan through an acquaintance named Greg Howell ("Howell"). The Debtor was seeking a $50,000 loan for a three month period and offered to pay an annualized interest rate of 60%. The Debtor prepared an interest only promissory note, which Howell and Tan amended.[3]

---

[2] The Plaintiff did not elaborate on the nature of the Debtor's business and how exactly it operated. For example, it is unknown whether the Debtor maintained an inventory of properties for which leases had been executed or whether, once SeamlessTransition was approached by clients, the Debtor identified and leased specific properties for them.

[3] The Plaintiff did not provide information about Howell or set forth his relationship to either the Debtor or the Plaintiff. The Plaintiff also did not allege that the note was executed. It did not provide the date the note was executed or explain why the Debtor would offer such an exorbitant and usurious rate of interest. Additionally, the Plaintiff did not identify the written materials, if any, submitted to RBSF by the Debtor to induce it to loan her $50,000, and it did not identify the time, place, and substance of any representations which she made to RBSF to induce it to make the loan. The Plaintiff did not attach a copy of the note or any loan documents or set forth the material terms of the loan. The Plaintiff did not indicate what Tan, on behalf of RBSF,

3

On January 9, 2008, the Plaintiff alleged that Franklin emailed Tan seeking further funding to greatly expand her business and attaching a document purporting to show a positive cash flow for every month from April of 2007 through January of 2008.[4]  It also alleged that Franklin telephoned Tan, seeking an additional $300,000 loan with a 23% interest rate.  According to RBSF, Tan refused to make that loan, and Franklin, in response, represented that she had committed all her cash to business expansion and could not repay the original $50,000 loan.

The Plaintiff alleged that Franklin told Tan that the only way she could repay the original loan was to borrow an additional $100,000 and use $50,000 from the new loan proceeds to retire the first loan.  Allegedly, she offered to increase the interest rate from 23% to 50% as an inducement.

On January 16, 2008, according to RBSF, Franklin executed and delivered to it a promissory note which she drafted in the principal amount of $100,000, and RBSF transferred $100,000 to Franklin's account.[5]  The Plaintiff alleged that the note provided

---

relied upon in making the original $50,000 loan:  statements made by the Debtor, written documents as to the Debtor's financial condition or a projection of the funds that the Debtor would generate from the loan proceeds, or some other materials or combination of materials.  In a subsequent numbered paragraph, the Plaintiff stated that the Debtor provided Tan with financial statements but did not say when.  It indicated that she provided him with "expense figures on or about June 1, 2008, which was after the execution of a second note.

[4] The Plaintiff did not attach the document as an exhibit to its Complaint.

[5] The Plaintiff did not allege that it relied on any representations or documents provided to it by the Debtor before making the first loan.  Similarly, it did not allege that RBSF either reasonably or justifiably relied on statements of financial condition or

4

that Franklin initially was obligated to make monthly payments to RBSF in the form of pro rated interest payments. According to the Plaintiff, commencing on February 15, 2008, Franklin was obligated to make monthly interest-only payments for the first eight months in the amount of $4,166.66, for a total of $33,333.28. The note then provided that 50% of the principal balance was to be repaid over a period of six months commencing on October 15, 2008 in monthly installments of $9,598.91. The note also provided for a 30-day grace period, and contained provisions governing late charges, default, profit sharing, and legal expenses.[6]

The Plaintiff alleged that Franklin failed to make the first payment due under the note. Tan, on behalf of RBSF, agreed to extend the due date for the first interest payment to March of 2008. The Plaintiff further alleged that Franklin tendered the March and April payments but failed to make the interest payment for May.

According to RBSF, Tan and the Debtor communicated by telephone about her failure to make payments. The Plaintiff alleged that Franklin claimed her revenue was increasing and that she was owed a large receivable. It asserted that Tan, on the one hand,

---

representations made by the Debtor in executing the $100,000 note. It did not explain why it would be justifiable or reasonable to rely on the Debtor's words or documents to advance additional funds when the Debtor had defaulted with respect to the original loan.

[6] The Plaintiff did not attach a copy of the note or explain why it advanced the Debtor $100,00. It did not indicate whether it relied upon statements relating to the Debtor's financial condition or her representations about her business and experience. It did not explain why its sole member, Tan, believed that she would be able to make the sizeable monthly payments called for under the note.

repeatedly requested accurate expense figures from Franklin, while Franklin, on the other hand, represented that, if she did not receive $18,000 immediately, she would be forced to file a bankruptcy petition. The Plaintiff alleged that Franklin added that she did not have funds available in the approximate amount of $2,000 to pay her business insurance premium, and, according to RBSF, she falsely represented that she had made the May, 2008 payment.

The Plaintiff alleged that Tan and Franklin continued to communicate about the missed May payment. Thereafter, according to RBSF, Tan attempted to determine why Franklin was facing a cash shortfall, "particularly given that Franklin had previously delivered to RBSF financial statements reflecting a positive cash flow."[7] RBSF alleged that when Franklin finally delivered expense figures to Tan on or about June 1, 2008, Tan was able to perform his own calculations, discovering in the process that Franklin's "earlier representations about the health of her business, net of the $100,000 cash injection from Tan, [showed that] Franklin's cash flow was, in fact, almost -$77,000 [sic] in January 2008, the date of the inception of the Note."[8] The Plaintiff alleged that the Debtor's cash flow continued to be negative through May 2008, although Franklin provided Tan with

_____

[7] The Plaintiff failed to identify when the Debtor provided it with financial statements, i.e., before the execution of the $50,000 note, after the execution of the $50,000 note and before the execution of the $100,000 note, or after the execution of the $100,00 note. Moreover, to the extent, she provided statements as to her financial condition or the financial condition of her business before the execution of the loans, the Plaintiff did not specifically set forth what specifically they contained.

[8] The Plaintiff did not explicitly refer to the $100,000 note executed on January 16, 2008.

projections showing a positive cash flow and profits for June, July and August 2008.

RBSF alleged that Tan insisted on speaking to the Debtor's accountant and that the Debtor represented that she would arrange for that to happen, but did not do so.  In June of 2008, RBSF alleged that the Debtor suspended communications with Tan and failed to make the June payment.

RBSF asserted that on or about June 5, 2008, through Tan, it offered to convert the note to an interest-free loan and deem all interest payments previously received, including interest under the original note, as payments applied to principal, if Franklin resumed making the monthly payments of $4,166 in July and promised to repay the balance of $76,6678 in full in July of 2009.  The Plaintiff alleged that its offer expired on June 10, 2008.

According to RBSF, Franklin requested a one-week extension of the conversion deadline, but she failed to contact Tan by June 17, 2008.  The Plaintiff alleged that, in late June, however, Franklin contacted Tan seeking $15,000 for her business.  When Tan, on behalf of RBSF, did not respond, Franklin asked him to restructure the note to one bearing interest at the rate of 23% payable in 36 equal installments of $3,817.82, commencing on July 15, 2008.  She also asked for an additional $14,688.  RBSF alleged that Franklin represented that she was making money again but needed a cash infusion to pay off "urgent debt." RBSF alleged that Franklin emailed Tan with a report listing monthly rental payments for the properties she purported to hold.

RBSF alleged that Franklin and Tan continued to communicate and that at one point Franklin claimed that she had $12,000 in cash in her account, although earlier on the same

day she had stated that she had spent $11,742.  The Plaintiff further alleged that Tan then

determined that "Franklin had no intention of honoring her debt to RBSF."  Nevertheless,

RBSF alleged that it offered to restructure the note by advancing Franklin $5,000 in cash to

cover her "urgent debt."  Additionally, it offered to issue a new note in the amount of

$105,000 with interest payable at the rate of 20% amortized over five years with monthly

payments of $2,781.86 commencing on August 15, 2008.  According to RBSF, Franklin

rejected the offer because it did not provide for a $14,668 cash infusion.

The Plaintiff alleged that in a telephone conversation which took place on July 6,

2008, after the execution of the $100,000 note, Tan asked Franklin how much capital she had

used to start her business.  According to RBSF, Franklin's responses varied and her stories

about loans from her sister were inconsistent.

The Plaintiff further alleged that Franklin asked Tan to lend her an additional

$100,000 and initially "represented emphatically that revenue for Seamless Transition was

increasing even in 2008."  At that point, Tan, on behalf of RBSF, insisted that it would not

lend her additional monies without understanding her financial situation.  The Plaintiff

alleged that Franklin then provided Tan with a profit and loss statement for properties in

Boston only, although her website listed rental properties in Atlanta, Chicago, Washington,

D.C., New York and Florida.  According to RBSF, Franklin refused to reveal an accurate

statement of her assets or those of her company.  RBSF asserted that Franklin's website

contained a list of "many properties in Boston where the minimum stay is seven days or

less," although Franklin acted as agent for potential renters of properties where the

8

minimum stay was for 30 days or more.  It added that there were more properties allowing

for short-term stays listed on the website than disclosed on her financial statement.

According to RBSF, it delivered a notice of default to Franklin on July 10, 2008. The

Plaintiff alleged that, in response, on July 11, 2008, Franklin emailed Tan as follows:

> I am truly sorry that my frustration with my current situation created animus
> between us.  I am sincerely appreciative of you [sic] support in the past and
> now.

> However, I am only left with 2 choices.

> Pay my short-term debts so I have the capacity to continuing [sic] earning
> and pay long-term debt, which requires an immediate cash infusion of
> $28,000; or, not pay debt current debt [sic] and default on both long and
> short-term owing, which includes your $100,000 investment.

> Over the last 4-days, I have been looking for resolution to my short fall of
> $38,600 for July, while awaiting receipt of $15,873 in receivables (actual
> owing as of today).  I have collected only $3, 300K [sic] since we last spoke.

> With my attorney, Daniel Briansky's help, I have been working with, Data
> Management Real Estate Group and the best known real estate business
> consultant in the US, Jeff Kroger (Phoenix, AZ), whom I'm sure you know or
> have read his books to help me figure my way out of this cash flow crisis.

> At the moment, I am overdrawn $2,8 [sic]

The Plaintiff alleged that Tan continued to communicate with Franklin and, in an

email dated July 29, 2008, offered another amendment to the note, namely a new, interest

free loan of $100,000 payable in the monthly amount of $1,666.67, beginning on September

1, 2008.  According to RBSF, Franklin replied by email dated July 31, 2008, stating that

without another $12,000 in the next 24 hours "SeamlessTransition is history."  She added:

"Mr. Tan, please, please, advance me this small sum to keep SeamlessTransition viable."

9

The Plaintiff alleged that, on August 3, 2008, Franklin against requested additional funds and begged Tan for help.

According to the Plaintiff, it filed suit against Franklin approximately six weeks later in the Suffolk Superior Court, Department of the Trial Court, in which it asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, misrepresentation/fraud, conversion, unjust enrichment, and violations of Mass. Gen. Laws ch. 93A. The Plaintiff alleged that the state court entered a preliminary injunction and granted a trustee process attachment freezing Franklin's account at Citizen's Bank "to the value of $125,000." According to RBSF, Citizen's Bank answered indicating that it was holding less than $50. Franklin filed a Suggestion of Bankruptcy on November 200, 2008.

Based upon the foregoing allegations, RBSF formulated one count under 11 U.S.C. § 523(a)(4) [sic]. It stated:

> [T]he Debtor should not be granted a discharge [sic] in that she obtained money or property from Tan by false pretenses, false representations, or actual conversion and larceny, and/or because while acting in a fiduciary capacity, she committed larceny, fraud and conversion against Tan.

In addition, the Plaintiff sought damages for Tan, Relief from Stay to enable Tan "to pursue his remedies against Franklin in state court," and "a judgment for Tan [sic] and against the Franklin [sic] in an amount to be determined by the Court."

The Debtor answered the Complaint. She did not assert any affirmative defenses or counterclaims.

C. The Court's Pretrial Orders

10

On April 7, 2009, the Court issued a Pretrial Order, establishing 1) June 5, 2009 as the deadline for the submission of a certification that the parties held a Rule 26(f) conference, *see* Fed. R. Civ. P. 26(f), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7026; 2) July 19, 2009 as the deadline for the completion of discovery; and 3) August 12, 2009 as the deadline for the submission of a Joint Pretrial Memorandum. The parties submitted their Rule 26(f) certification, proposing a modification to the discovery deadline. In addition, they submitted a Joint Motion to Amend Scheduling Order. The Court granted the Motion, setting October 13, 2009 as the discovery deadline and November 13, 2009 as the deadline for the submission of the Joint Pretrial Memorandum. The parties moved numerous times to extend the applicable deadlines.[9] On February 27, 2010, the parties moved to extend the deadline to April 28, 2010, and the Court granted that motion.

On April 28, 2010, the parties filed their Joint Pretrial Memorandum. The parties identified the issue as "[w]hether the defendant should be denied a discharge of the loaned funds due to fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, pursuant to 11 U.S.C. § 523(a)(4)."

D. The Pretrial Conference

---

[9] On October 15, 2009, the parties again sought modification of the discovery deadline. The Court granted that motion, establishing December 13, 2009 as the discovery deadline and January 13, 2010 as the deadline for filing the Joint Pretrial Memorandum. On January 12, 2010, the parties again moved to extend the deadline for submission of the Joint Pretrial Memorandum to February 28, 2010. The Court granted the Motion on the same day.

The Court conducted a pretrial conference on June 24, 2010 at which time it asked counsel for the Plaintiff to identify the specific facts in the Complaint which supported Count I pertaining to the Debtor's fraud or defalcation while acting in a fiduciary capacity. Counsel to the Plaintiff responded that "a series of promissory notes" resulted in a fiduciary relationship. The Court rejected the Plaintiff's assertion, noting that a debtor-creditor relationship such as that set forth in the Complaint does not give rise to a fiduciary relationship.[10] The Court ruled that "[t]he plaintiff fails to state a claim upon which relief can be granted." The Court directed the Plaintiff to file a Motion to Amend its Complaint by July 9, 2010.

E. Subsequent Procedural Events

On July 9, 2010, the Plaintiff filed a "Motion for Leave to Amend the Adversary Proceeding Complaint Objecting to Dischargeability by Restating the Subsection of Section 523 of the Code under which the Objection is Made." It moved to substitute the reference in the Complaint to § 523(a)(4) with a reference to § 523(a)(2) [sic], but it did not file an amended complaint.

The Plaintiff filed a Memorandum in support of its Motion for Leave to Amend. In its Memorandum, the Plaintiff cited Fed. R. Civ. P. 15, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7015, as well as cases, such as Field v. Mans, 516 U.S. 59 (1995), Palmacci v. Umpierrez, 121 F.3d 781, 786 n.3 (1st Cir. 1997), and Lentz v. Spadoni

---

[10] *See generally* Oak St. Funding LLC v. Brown (In re Brown), 399 B.R. 44, 46 (Bankr. N.D. Ind. 2008)(The "fiduciary capacity" required by § 523(a)(4) requires something more than a debtor-creditor relationship.").

12

(In re Spadoni), 316 F.3d 56, 58 (1st Cir. 2003).  The Plaintiff added that "a plain reading of the Complaint indicates that the plaintiff has been proceeding under section 523(a)(2) from the inception of the action. . . ."  The Plaintiff further argued that its Complaint tracked the complaint it filed in state court and that the Debtor was on notice of its claims for fraudulent inducement.

In further support of its Motion for Leave to Amend, the Plaintiff referenced Franklin's deposition in which she admitted that her resume, which she had given to the Plaintiff at some unspecified time, was inaccurate as it misrepresented her role in the company as a corporate CEO and the company's growth.  The Plaintiff also cited the Debtor's admission that she falsely claimed to hold a degree from Howard University when, in fact, she did not graduate from high school.  Additionally, the Plaintiff noted that documentation provided by Franklin obscured the distinction between revenue and profit, contained erroneous information about the years of operation of SeamlessTransition and her real estate experience, and income and liabilities.  The Plaintiff attached a copy of an email, dated January 9, 2008, just prior to the execution of the $100,000 note on January 16, 2008, sent by the Debtor to Tan in which the Debtor represented that "[s]ince May 2007, we have been able to acquire 23 rental properties generating approximately $99,800 in new revenue over the last 7-months."  The Plaintiff concluded: "no matter how innocent she might have though her motives were, [she] induced the plaintiff to lend her money (that she knew or should have known she would not be able to repay) based on a series of material documentary and verbal misrepresentations on which she intended the plaintiff

to rely, and on which, in fact, the plaintiff did rely."

The Debtor opposed the Plaintiff's Motion to Amend, citing Fed. R. Bankr. P. 7016. She observed that two important case deadlines had passed, namely the discovery deadline of October 13, 2009, as well as the June 24, 2010 deadline for submitting pre-trial motions [sic].[11]   The Debtor cited <u>Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.</u>, 524 F.3d 315, 327 (1st Cir. 2008), for the proposition that the purpose of Rule 16 is "to assure that at some point. . . the pleadings will be fixed" and that the Plaintiff failed to satisfy the applicable "good cause" standard.

The Court conducted a hearing on the Plaintiff's Motion for Leave to Amend and the Debtor's Opposition on October 19, 2010.  The Court denied the Motion to Amend without prejudice as to the filing a further motion to amend.  At the October 19, 2010 hearing, the Court inquired of counsel to the Plaintiff whether the Complaint was based upon false statements respecting the Debtor's financial condition or false representations. Counsel to the Plaintiff answered: "I think it's both . . . ."  The Court explained to counsel to the Plaintiff that a distinction exists between § 523(a)(2)(A) and § 532(a)(2)(B).  The Court directed the Plaintiff to file another motion to amend and a proposed amended complaint by October 26, 2010.

On October 26, 2010, the Plaintiff filed an "Amended Motion for Leave to Amend the Adversary Proceeding Complaint Objecting to Dischargeability by Restating the

---

[11] The discovery deadline was extended until December 13, 2009 and the deadline for dispositive motions was April 21, 2010.  The parties' Motions to Extend reveal that they engaged in discovery through March of 2010.

Subsection of Section 523 of the Code under Which the Objection is Made," together with a Memorandum and an Amended Complaint.  The Plaintiff sought to substitute the original reference to § 523(a)(4) with a reference to § 523(a)(2)(A).  The Debtor opposed the Amended Motion.  The Court heard the Amended Motion and the Opposition on February 3, 2011 and denied the Motion.  At the hearing, the Court inquired whether the misrepresentations allegedly made by the Debtor were as to her financial condition. Counsel to the Plaintiff answered that the misrepresentations were as to the Debtor's financial condition and that there were writings.  He further indicated that the documents, which he did not have with him, consisted of financial statements and emails.  When asked why he did not amend the Plaintiff's Complaint to plead a cause of action under § 523(a)(2)(B), he responded that "the vast majority of the representations were verbal . . . and they - - the writings were post-loan."  At the conclusion of the hearing, the Court denied the Amended Motion for Leave to Amend.  The reasons for that decision are discussed below.  The Plaintiff now moves for reconsideration.

F. <u>The Amended Complaint</u>

A comparison of the original Complaint and the Amended Complaint is crucial to a determination of the Motion for Reconsideration.  In the Amended Complaint, RBSF added a number of allegations, including an allegation that Tan is a recent immigrant from Singapore and an inexperienced lender.  The Plaintiff additionally alleged that Tan attended a seminar promising to match potential investors with business opportunities and that Franklin had been introduced to Tan as the personification of just such an opportunity.

15

RBSF added allegations that on or around January 9, 2008, in connection with the Debtor's request for additional funds to expand her business, "Franklin prepared financial statements, including a 'prospectus' that materially misrepresented Seamless Transitions [sic] actual financial situation and Franklin's background and transmitted them to Tan."[12] RBSF alleged that it executed the $100,000 note "in reliance on Franklin's financial statements, her representations about the growth of her business, and her Website" before transferring $100,000 to her account.[13]

Except for those additional allegations, the Plaintiff did not amend the "Statement of Facts" set forth in the original Complaint. The Plaintiff, however, amended Count One to set forth a cause of action under 11 U.S.C. § 523(a)(2)(A), stating that

> [T]he Debtor *should not be granted a discharge* [sic] in that she obtained from RBSF money, and and [sic] an extension, renewal, or refinancing of credit, by - - (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition on which representation RBSF, whom the debtor is liable for such money, property, services, or credit justifiably relied.

(emphasis supplied). In its Prayers for Relief, the Plaintiff sought a determination not only that the Debtor is not entitled to a discharge in bankruptcy, but relief from the automatic stay and "judgment for RBSF and against the Franklin."

_____

[12] RBSF did not amend the complaint to set forth when the original note was executed, but the Court notes that the January 9, 2008 email preceded the execution of the $100,000 note by one week.

[13] RBSF did not aver whether the reliance was justifiable or reasonable. The Court notes that the new loan was made after the Debtor had informed RBSF that she could not repay the original $50,000 loan.

G. <u>The Motion for Reconsideration and the Opposition</u>

The Plaintiff moved for reconsideration of the Court's Order of February 3, 2011 under "Rule 8015," which is inapplicable as it pertains to motions addressed to the district court or the bankruptcy appellate panel for rehearing. The Plaintiff stated that "pleading Section 523(a)(2)(A) was appropriate under the circumstances, and, in the alternative, it should be granted leave to amend to plead in the alternative Section 523(a)(2)(B)." The Plaintiff argued that RBSF has a substantial claim; that Fed. R. Bankr. P. 7015 permits amendments "freely when justice so requires;" and that dismissal at this stage on the existing record could promote form over substance which would be contrary to the policy of disposing of cases on the merits.

The Plaintiff attached to its Motion for Reconsideration portions of the Debtor's deposition, which was taken on March 24, 2010, a copy of the Debtor's curriculum vitae, which reflected, falsely, that the Debtor is the founder and CEO of a corporate short-term housing and relocation management start-up currently operating in five (5) states . . . ." and has a B.A. from Howard University.

In her Opposition, the Debtor argued that the Plaintiff's Motion for Reconsideration should be denied because it is based upon arguments that the Plaintiff previously made; the evidence was available when the underlying motion was decided but not brought to the Court's attention; and that the Plaintiff previously could have made its present arguments.

# III. ANALYSIS

### A. <u>Applicable Law</u>

#### 1. Rule 9024

Rule 9024 of the Federal Rules of Bankruptcy Procedure make Fed. R. Civ. P. 60 applicable to cases under the Bankruptcy Code, subject to certain exceptions not relevant to the instant adversary proceeding.  Rule 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).   Rule 60(b) is applicable to the instant matter.  According to the United States Court of Appeals for the First Circuit, in the context of a motion to vacate a default judgment, Rule 60(b)(6), "is a catch-all provision" and "[t]he decision to grant or deny such relief is inherently equitable in nature."  <u>Ungar v. The Palestine Liberation Organization</u>, 599 F.3d 79, 83 (1st Cir. 2010) (citing <u>United States v. One Star Class Sloop Sailboat</u>, 458 F.3d 16, 25-26 & n. 10 (1st Cir. 2006); and <u>Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., Inc.</u>, 953 F.2d 17,

18

19-20 (1st Cir. 1992)).  According to the First Circuit, however, "it is the invariable rule, and thus, the rule in this circuit, that a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise." Teamsters, 953 F.2d at 20.  Additionally,

> A variety of factors can help an inquiring court to strike the requisite balance. Such factors include the timing of the request for relief, the extent of any prejudice to the opposing party, the existence or non-existence of meritorious claims of defense, and the presence or absence of exceptional circumstances. This compendium is neither exclusive nor rigidly applied. Id. Rather, the listed factors are incorporated into a holistic appraisal of the circumstances. In a particular case, that appraisal may-or may not-justify the extraordinary remedy of vacatur.

Ungar, 599 F.3d at 83-84 (footnote omitted, citations omitted).  Thus, the contours of  a motion for reconsideration, determination of which is reviewed for abuse of discretion, is "peculiarly malleable" and "hard-and-fast rules generally are not compatible with Rule 60(b)(6) determinations." Id. at 84 (citations omitted).

In bankruptcy cases, courts in this district routinely hold that motions for reconsideration are not "a means by which parties can rehash previously made arguments" and that to succeed on motions to reconsider, the movant must "show newly discovered evidence or a manifest error of fact or law." In re Wedgestone Financial, 142 B.R. 7, 8 (Bankr. D. Mass. 1992) (citations omitted).

### 2. Rule 7015

Rule 15(a) of the Federal Rules of Civil Procedure, which is made applicable to adversary proceedings by Fed. R. Bankr. P. 7015,  provides in relevant part that "a party

may amend the party's pleading only by leave of court . .  and leave shall be freely given

when justice so requires." According to the United States Court of Appeals for the First

Circuit, there is a "liberal" amendment policy applicable to Rule 15." Epstein v. C.R. Bard,

Inc., 460 F.3d 183, 190 (1st Cir. 2006)  (citing  O'Connell v. Hyatt Hotels of Puerto Rico, 357

F.3d 152, 154 (1st Cir. 2004)).  "However, although 'a district court's denial of a chance to

amend may constitute an abuse of discretion if no sufficient justification appears . . . a

district court need not grant every request to amend, come what may.'" Epstein, 460 B.R.

at 191 (citing Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 59 (1st Cir. 1990), *overruled*

*on other grounds by* Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 66

(1st Cir. 2004).  The First Circuit also has observed that when a motion to amend is filed late

in a case, Rule 16(b) establishes a different standard from the normal "freely given"

standard.  In Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315 (1st Cir. 2008).

In Trans-Spec, the First Circuit stated:

> Rule 16(b) requires that the district court enter a scheduling order setting the
> deadlines for subsequent proceedings in the litigation, including amendment
> of the pleadings. Fed. R. Civ. P. 16(b)(1), (3)(A). One purpose of the rule is "to
> assure 'that at some point . . . the pleadings will be fixed.'" O'Connell [v.
> Hyatt Hotels of P.R.], 357 F.3d [152,]at 154 [(1st Cir. 2004)](quoting Adv.
> Comm. Notes to 1983 Amends. to Fed. R. Civ. P. 16(b)). The deadlines
> established in the scheduling order may be extended on a showing of good
> cause. Id. Our case law clearly establishes that Rule 16(b)'s "good cause"
> standard, rather than Rule 15(a)'s "freely give[n]" standard, governs motions
> to amend filed after scheduling order deadlines. Id. at 154-55.

Trans-Spec, 524 F.3d at 327.  In Trans-Spec, the First Circuit affirmed a decision of the

district court denying a motion to amend in part on the grounds that "[t]he allegations that

Trans-Spec seeks to add to its amended complaint are based on information that Trans-Spec had or should have had from the outset of the case."  Id.

The "good cause" inquiry must focus on prejudice to the defendant, the moving parties' diligence in satisfying the scheduling order's requirements, the promptness of the party in moving to amend when new information is gleaned during discovery, and delay in the proceedings.  *See* Burns v. Hale and Dorr LLP, 242 F.R.D. 170 (D. Mass. 2007); Rich & Rich P'ship v. Poetman Records USA, Inc., 2009 WL 5064454 (E.D. Ky. Dec. 15, 2009). *Cf.* Resnick v. Copyright Clearance Center, Inc., 422 F.Supp.2d 252, 256 (D. Mass. 2006) (" Rule 15(a) amendments are typically allowed 'in the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [or] futility of the amendment.'").

B. Analysis

In its Motion for Reconsideration, the Plaintiff failed to reference Fed. R. Bankr. P. 9024 or Fed. R. Civ. P. 60(b).  It did not set forth any *newly discovered* evidence or refer to any manifest error of law or fact.   Accordingly, on those grounds alone, the Court would have cause to deny its Motion for Reconsideration.

The Plaintiff's original Complaint purported to set forth a cause of action under 11 U.S.C. § 523(a)(4), although it was devoid of any allegations which would have permitted this Court to have found a fiduciary relationship, larceny, or embezzlement.  At the hearing on June 24, 2010, the Court informed counsel to the Plaintiff, who argued that a series of

21

promissory notes gave rise to a fiduciary relationship, that he conceivably was attempting to assert causes of action under § 523(a)(2)(B) or § 523(a)(2)(A). The Plaintiff, in response, attempted to cure the deficiencies of the original Complaint through the expedient of a simple substitution - - replace the reference to § 523(a)(4) with a reference to § 523(a)(2). That attempt failed on October 19, 2010. Although counsel to the Plaintiff argued that he was asserting causes of action under both § 523(a)(2)(A) and § 523(a)(2)(B), the original Complaint failed to adequately differentiate between allegations which would satisfy the elements of a cause of action under either § 523(a)(2)(A) or § 523(a)(2)(B).

Following the October 19th hearing, the Plaintiff filed its Amended Motion to Amend and its Amended Complaint. The Amended Complaint failed to cure the deficiencies associated with the original Complaint, although it contained allegations of reliance on "Franklin's financial statements, her representations about the growth of her business, and her Website" with respect to the January 16, 2008 loan in the amount of $100,000, and it specifically referenced a cause of action under § 523(a)(2)(A) and, in Count I itself, justifiable reliance.

In the Amended Complaint, the Plaintiff set forth no allegations in its "Statement of Facts" as to the level of reliance - - justifiable or reasonable - - or how reliance could have been either actual, justifiable or reasonable in view of the allegation in paragraph 13 of the Amended Complaint (as well as in paragraph 13 of the original Complaint) that "Franklin . . . represented that she had committed all her cash to business expansion and could not repay the original $50,000 loan." Moreover, the Plaintiff repeatedly confused exceptions

22

to discharge under § 523(a) with grounds for the denial of the discharge under 11 U.S.C. § 727(a).

Despite those deficiencies and the requirements of Fed. R. Bankr. P. 7009, which makes the requirement of pleading fraud with particularity under Fed. R. Civ. P. 9(b) applicable to this adversary proceedings, the Court is mindful that the Plaintiff is not required to prove its case at this juncture. Nevertheless, the Amended Complaint is devoid of any blue print for establishing a claim under § 523(a)(2)(A) due to the failure to plead the requisite elements of a cause of action under that subsection of the Bankruptcy Code, *see* <u>Palmacci v. Umpierrez,</u> 121 F.3d 781, 786 (1st Cir. 1997).[14] The Plaintiff, despite the Court's case management instructions to Plaintiff's counsel at hearings on June 24, 2010 and October 19, 2010 failed to distinguish between the separate causes of action under § 523(a)(2)(A) and § 523(a)(2)(B).

In view of those problems, the Court must decide whether the Plaintiff satisfied its burden under Fed. R. Civ. P. 60(b), and, assuming that it did, whether the Plaintiff established good cause for the allowance of its "Amended Motion for Leave to Amend the Adversary Proceeding Complaint Objecting to Dischargeability by Restating the Subsection

---

[14] According to the First Circuit,

> Under the traditional common law rule, a defendant will be liable if (1) he makes a false representation, (2) he does so with fraudulent intent, i.e., with "scienter," (3) he intends to induce the plaintiff to rely on the misrepresentation, and (4) the misrepresentation does induce reliance, (5) which is justifiable, and (6) which causes damage (pecuniary loss).

<u>Id.</u> (citations omitted).

of Section 523 of the Code und which the Objection Is Made," thereby permitting RBSF to

proceed with its Amended Complaint under 11 U.S.C. § 523(a)(2)(A).

For purposes of reconsideration, the Court finds that it must balance the equitable

nature of the relief requested with a determination of whether vacating the order denying

the Amended Motion to Amend would not be an empty exercise.  In this regard, the

Plaintiff's Amended Complaint is critical.  To repeat, the Plaintiff pled that it relied upon

financial statements, representations about the growth of the Debtor's business and the

Debtor's Website, without specifying the contents of that Website.  It did not set forth the

specific representations which were made by the Debtor to Tan or when they were made

to induce RBSF to make both the original and subsequent loans. *See* Palmacci v. Umpierrez,

121 F.3d. at 786.[15]   Additionally, as noted above, the Plaintiff did not set forth any

---

[15] In Palmacci, the First Circuit observed:

[T]he concept of misrepresentation includes a false representation as to
one's intention, such as a promise to act. "A representation of the maker's
own intention to do . . . a particular thing is fraudulent if he does not have
that intention" at the time he makes the representation. Restatement
(Second) of Torts § 530(1); *see* Anastas v. American Sav. Bank (In re
Anastas), 94 F.3d 1280, 1285 (9th Cir.1996). "The state of a man's mind is as
much a fact as the state of his digestion." Restatement (Second) of Torts §
530 cmt. a. Likewise, "a promise made without the intent to perform it is
held to be a sufficient basis for an action of deceit." W. Page Keeton, et al.,
Prosser and Keeton on the Law of Torts *787 § 109, at 763 (5th ed.1984)
(footnotes omitted); see Restatement (Second) of Torts § 530(1) cmt. c. On
the other hand, if, at the time he makes a promise, the maker honestly
intends to keep it but later changes his mind or fails or refuses to carry his
expressed intention into effect, there has been no misrepresentation.
Restatement (Second) of Torts at § 530 cmts. b, d. This is true "even if
there is no excuse for the subsequent breach. A debtor's statement of
future intention is not necessarily a misrepresentation if intervening

allegations that reliance was justified in making the $100,000 in view of the Debtor's representations as to her inability to repay the initial loan. There were no allegations as to the Debtor's representations, as opposed to statements of financial condition which she provided, that led the Plaintiff to rely upon the representations to its detriment.

Applying the factors outlined by the First Circuit in <u>Ungar v. The Palestine Liberation Organization</u>, 599 F.3d at 83-84, the Court observes that the filing of the Motion for Reconsideration was timely. Although the Debtor might be prejudiced by the need to defend herself in the litigation, the Court could limit prejudice to her by an award of attorney's fees incurred in responding to the Plaintiff's two motions to amend. Additionally, the Debtor did not file any dispositive motions and essentially took a passive role relative to the issues raised by the Court, which she could have raised at the outset of the adversary proceeding by filing a motion to dismiss. The issue of whether the Plaintiff is entitled to proceed with its Amended Complaint turns upon whether vacating the order denying the Amended Motion for Leave to Amend would be a futile and empty exercise as the Court has no evidence of whether there exists a meritorious defense and there are no exceptional circumstances tipping the scales in favor of the Plaintiff.

The Court finds that a review of the Amended Complaint reveals deficiencies that would make reconsideration futile. Permission to further amend the Complaint to add a

---

events cause the debtor's future actions to deviate from previously expressed intentions." 4 Collier on Bankruptcy ¶ 523.08[1][d], at 523-43.

count under 11 U.S.C. § 523(a)(2)(B) is unwarranted in view of the ample opportunities

granted to the Plaintiff to file a complaint stating a plausible claim for relief.  The Amended

Complaint, as it stands, would be subject to dismissal for failure to state sufficient facts

that, if accepted as true, would "state a claim for relief that is plausible on its face." *See*

Cunningham v. Nat'l City Bank, 588 F.3d 49, 52 (1st Cir. 2009) (citing Ashcroft v. Iqbal, __

U.S. __, 129 S.Ct. 1937, 1949 (2009), and quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 570 (2007)).  Accordingly, the Court finds that reconsideration is unwarranted.

In summary, the Plaintiff failed to set forth newly discovered evidence, and it failed

to demonstrate a manifest error of law or fact.  Although the Plaintiff's Memorandum

contained citations to applicable law, including citations to Field v. Mans, 516 U.S. 59

(1995), and Palmacci v. Umpierrez, 121 F.3d 181 (1st Cir. 1997), Plaintiff's counsel

demonstrated profound unfamiliarity with provisions of the Bankruptcy Code and

Bankruptcy Rules.  The time to read the Bankruptcy Code and the applicable rules and

decisions was before the commencement of the adversary proceeding, not after the

deadlines set forth in the Court's pretrial order, as amended, had passed and the  Court

ordered an amendment to the Complaint.  The inability of the Plaintiff to set forth in a

cogent and chronological manner the facts required to state a cause of action under either

§ 523(a)(2)(A) or § 523(a)(2)(B) was not remedied by the Amended Complaint.  The Plaintiff

failed to set forth in its Amended Complaint when and what material misrepresentations

the Debtor made and the circumstances which would have permitted it to rely upon those

representations to make a $100,000 loan after learning that the Debtor could not repay the

existing $50,000 loan.  Accordingly, reconsideration would be "an empty exercise" under Rule 60(b).  Teamsters, 953 F.2d at 20.

Assuming, arguendo, that the allowance of the Amended Motion to Amend were warranted and this Court were to reconsider its order of February 3, 2011, the Court would be required to determine whether the Plaintiff established good cause for allowance of the Plaintiff's second motion to amend.  The Plaintiff failed in that burden.

The Plaintiff did not allude to unknown facts which prevented it from amending its Complaint before the expiration of the deadline for filing dispositive motions.  Although it referenced the Debtor's deposition and other written materials, including emails, those materials were available to the Plaintiff in March of 2010, before the pretrial conference was even scheduled.  There has been substantial delay in this case.  Had the Plaintiff moved to amend its Complaint in July of 2011 and filed an Amended Complaint containing the requisite elements of causes of action under § 523(a)(2)(A) or § 523(a)(2)(B), the Court would be conducting a trial at this time, rather than addressing a Motion for Reconsideration "pursuant to Rule 8015."  In view of the delay and the obvious prejudice to the Debtor due to that delay, the Court finds that the Plaintiff has failed to establish good cause for the allowance of the Plaintiff's Amended Motion to Amend.  See Burns v. Hale and Dorr LLP, 242 F.R.D.  at 174; Rich & Rich P'ship v. Poetman Records USA, Inc., 2009 WL 5064454 at *4-5.

To grant either the Motion for Reconsideration or  the Amended Motion to Amend at this juncture would undermine the integrity of the Court's pretrial order and reward the

shoddy pleading of Plaintiff's counsel, who with guidance from the Court was afforded multiple opportunities to correct the deficiencies in the original Complaint.   As the Bankruptcy Appellate Panel for the Tenth Circuit has observed: "A bankruptcy court's power to manage a case does not depend upon the Bankruptcy Rules, but rather it arises from the court's 'inherent authority to issue pretrial case management orders and to enforce them by appropriate measures.'" Rafter Seven Ranches L.P. v. WNL Investments L.L.C. (In re Rafter Seven Ranches L.P.), 414 B.R. 722, 739 (B.A.P. 10th Cir. 2009) (citing Adams v. Dorsie's Steak House, Inc. (In re Dorsie's Steak House, Inc.), 130 B.R. 363, 365 (D. Mass. 1991)).

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order denying the Plaintiff's Motion for Reconsideration or hearing Regarding Court's Order on Plaintiff's Motion for Leave to Amend the Adversary Complaint.   The Plaintiff was afforded an opportunity to amend its Complaint in June of 2010 to state a cause of action under § 523(a)(2)(B).   It chose not to do so, relying upon the provisions of "§ 523(a)(2)."   The Amended Complaint fails to state a cause of action under § 523(a)(2)(A).   Accordingly, allowing the underlying Amended Motion for Leave to Amend would be an empty exercise.

By the Court,

Joan N. Feeney

28

Joan N. Feeney
United States Bankruptcy Judge

Dated: March 15, 2011